UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOY CHALCRAFT,

    Plaintiff,

v.                                              Case No. 3:22-cv-476-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1977, obtained an associate degree, and has past relevant work experience as a medical assistant. (R. 28–29, 43, 222). In May 2020, the Plaintiff applied for DIB and SSI, alleging disability as of May 2019 due to dysautonomia, fibromyalgia, Sjögren's syndrome,[1] rheumatoid arthritis, and

---

[1] Sjögren's syndrome "'is a disorder of [the] immune system identified by its two most common symptoms—dry eyes and a dry mouth.'" *Gray v. Comm'r of Soc. Sec.*, 2019 WL 3934441, at *1 n.1 (M.D. Fla. Aug. 20, 2019) (quoting *Sjögren's syndrome*, Mayo Clinic,

connective tissue disease. (R. 225–32, 249). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 75–90, 95–122).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in September 2021. (R. 35–73, 151–152). The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. (R. 39, 41–67). A vocational expert (VE) also testified. (R. 67–71).

In a decision issued in September 2021, the ALJ found that the Plaintiff: (1) had not engaged in substantial activity since her alleged onset date in May 2019; (2) had the severe impairments of fibromyalgia, Sjögren's syndrome, Sicca syndrome,[2] rheumatoid arthritis, migraine headaches, cardiac palpitations, carpal tunnel syndrome, and osteoporosis of the lumbar spine; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[3] (4) had the residual functional capacity (RFC) to perform less than the full range of sedentary work; and (5) based on the VE's testimony, could not

---

https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216).

[2] Sicca syndrome is apparently similar to, if not the same as, Sjögren's syndrome. *See Munter v. Berryhill*, 2018 WL 1036986, at *13 (M.D. Fla. Jan. 5, 2018), *report and recommendation adopted*, 2018 WL 1000039 (M.D. Fla. Feb. 21, 2018); *Christopher v. Colvin*, 2016 WL 4385864, at *4 n.4 (N.D. Fla. June 24, 2016), *report and recommendation adopted*, 2016 WL 4394169, (N.D. Fla. Aug. 15, 2016).

[3] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 23–30). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 30).

The Appeals Council denied the Plaintiff's subsequent request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is

---

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted).  In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations.  *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions.  *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

The Plaintiff's sole challenge on appeal is that the ALJ erred in evaluating the assessments of an Advanced Practice Registered Nurse (APRN), Rita Azzo, who appears to have provided rheumatology-related care to the Plaintiff.  (Doc. 13 at 5–10).  After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenge lacks merit.

According to the evidence before the Court, Azzo treated the Plaintiff from January 17, 2019, through June 17, 2021, during which time she authored two reports that are pertinent here.  (Doc. 13 at 5); (R. 435, 471–72).  The first is a medical source statement from August 2020, in which Azzo described the Plaintiff as having a history of fibromyalgia and Sjögren's syndrome that were associated with "flare-ups."  (R. 435).  Azzo characterized these flare-ups as "vary[ing] in intensity," as potentially "last[ing] for several days," and as possibly affecting the Plaintiff's "functions and ability to work."  *Id*.  Azzo further observed in her report that the Plaintiff "fe[lt]

5

fatigued all the time" and that she complained of both insomnia and generalized chronic pain, the latter of which—Azzo remarked—might "worse[n] during flare-ups" and might render the Plaintiff bed-bound. *Id.* Azzo then opined:

> [The Plaintiff] is functioning with the help of the medications, which also have side effects that include drowsiness and sleepiness that may affect her a[b]ility to function during the day. She has [Sjögren's] syndrome which causes dryness of the mouth and sometimes affects her ability to swallow or talk when she is having a flare up. She is on multiple medications to control these chronic conditions.

*Id.*

The second report compiled by Azzo is a "Physical Capacity Evaluation" of the Plaintiff from July 2021. (R. 471–72). In this document, Azzo assessed that the Plaintiff could stand and walk for ten-to-fifteen minutes at a time but would need to rest for ten-to-fifteen minutes afterwards; could stand and walk for less than two hours in a workday; could sit for ten-to-fifteen minutes at a time provided she was subsequently afforded a five-to-ten minute period for standing and moving; and could sit for less than a total of two hours in a workday. (R. 471). Azzo also stated that the Plaintiff often experienced "fog" from her fibromyalgia, which impaired her capacity to concentrate and to focus on a task; that she was limited to lifting five pounds; that she would frequently require breaks exceeding the normal work breaks; and that she would be unable to complete an eight-hour workday four or more days per month. (R. 471–72).

In his decision, the ALJ considered Azzo's August 2020 medical source statement and her July 2021 Physical Capacity Evaluation, along with the "entirety"

6

of the record, and discounted both of Azzo's reports, including the restrictions she proposed for the Plaintiff in the latter document. (R. 27–28). The ALJ reasoned:

> Azzo['s August 2020 medical source statement] did not set forth any functional capacity limitations, but rather just noted that flares may affect the [Plaintiff's] functions and ability to work. However, [Azzo's] subsequent July 2021 opinion did set forth specific limitations . . . . The undersigned finds these opinions unpersuasive, as . . . Azzo's concurrent rheumatology treatment notes show tenderness but no other significantly abnormal examination findings and the records suggest that [the Plaintiff's] symptoms are managed with medication.

(R. 28) (internal citations omitted).

The Plaintiff now contends that, in rendering his RFC determination, the ALJ impermissibly substituted his opinion for the assessments made by Azzo in her July 2021 Physical Capacity Evaluation form,[6] even though—according to the Plaintiff—Azzo was a "treating medical source" and "the only medical provider who [recommended] specific limitations." (Doc. 13 at 5–6, 8–10). The Plaintiff also relatedly argues that, in doing so, the ALJ "mischaracterize[ed]" the underlying information contained in Azzo's treatment notes. *Id.* at 9.

It is well established that an ALJ may not arbitrarily substitute his own opinion for one offered by a medical professional. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam); *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir.

---

[6] As ALJ recognized in his decision (R. 27–28) and as the Commissioner points out in her brief (Doc. 14 at 9), the ALJ was under no obligation to evaluate Azzo's August 2020 medical source statement because it did not contain an assessment of the Plaintiff's ability to perform work-related activities and thus did not qualify as a medical opinion, *see* 20 C.F.R.§§ 404.1513(a)(2), 416.913(a)(2). The Plaintiff does not meaningfully argue otherwise.

1992) (per curiam) (Johnson, J., concurring specially); *Siracuse v. Acting Comm'r of Soc. Sec. Admin.*, 2017 WL 2644615, at *5 n.7 (M.D. Fla. June 20, 2017) (citation omitted). Such a scenario may occur when an ALJ "plays doctor" and takes it upon himself to analyze medical evidence beyond his ken, rather than confine himself to his proper role as "an adjudicator responsible for assessing [a claimant's] RFC" and for evaluating the medical opinions of record. *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (per curiam); *see also Rosario v. Comm'r of Soc. Sec.*, 2018 WL 5300202, at *4 (M.D. Fla. Aug. 23, 2018) (deeming the ALJ to have improperly "played doctor" when she formed her own judgment about the appropriate treatment for the claimant) (citations omitted), *report and recommendation adopted*, 2018 WL 5293230 (M.D. Fla. Oct. 25, 2018).

An ALJ does not "play doctor," however, merely by determining a claimant's RFC based upon his review of the record as a whole. *Castle*, 557 F. App'x at 853. Indeed, the pertinent regulations obligate an ALJ to render such an assessment. *Id.* at 853–54 (citation omitted); *see also Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (per curiam).

Moreover, of significance to the Plaintiff's challenge here, an ALJ is not required to base his RFC finding on a medical opinion regardless of the source. *See Castle*, 557 F. App'x at 854 (ruling the district court erred in necessitating that the ALJ's finding to be "underpinned by a medical source opinion"); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923–24 (11th Cir. 2007) (per curiam) (concluding that the

8

ALJ did not err in predicating the claimant's RFC on the medical evidence before him despite the fact that this finding conflicted with the only medical opinion of record, which the ALJ discredited); *Gray v. Comm'r of Soc. Sec.*, 2019 WL 3934441, at *9 (M.D. Fla. Aug. 20, 2019) ("The [c]laimant has failed to cite any authority—and the [c]ourt is unaware of any—creating a rigid requirement that the ALJ's RFC determination must be supported by a medical opinion."); *Falberg v. Colvin*, 2015 WL 12840465, at *5 (M.D. Fla. July 16, 2015) (rejecting the claimant's argument that the ALJ acted on "his own hunch" where the ALJ "made a well-reasoned determination in accordance with his duty to assess the evidence"). Instead, all that is necessary is that the ALJ's RFC finding be buttressed by substantial evidence. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 602 (11th Cir. 2017).

It is evident from the ALJ's decision in this case that he did not "play doctor" in addressing the Plaintiff's rheumatology-related impairments treated by Azzo. There is no indication in the ALJ's analysis of those impairments that he arbitrarily substituted his "own hunch or intuition" for the assessments made by Azzo. *Falberg*, 2015 WL 12840465, at *5; (R. 26–28). Instead, it is apparent from the ALJ's discussion of the matter that after reviewing the entirety of the record, he simply declined to adopt Azzo's findings because they did not cohere with Azzo's own concurrent treatment notes and the other information before the ALJ. This determination fell within the ALJ's proper role as the adjudicator of the Plaintiff's disability claim and did not constitute "playing doctor." *Moore*, 649 F. App'x at 945; *Castle*, 557 F. App'x at 853–54; *Falberg*, 2015 WL 12840465, at *5; *see also Beegle v. Soc.*

9

*Sec. Admin., Comm'r*, 482 F. App'x 483, 488 (11th Cir. 2012) (finding that the ALJ's rejection of a provider's opinion on the grounds it contravened the objective medical evidence did not amount to the ALJ incorrectly supplanting the provider's judgment with his own).

It is likewise evident from the ALJ's decision that his resolution of the Plaintiff's rheumatology-related impairments and the Plaintiff's attendant restrictions are supported by substantial evidence. As the ALJ observed, for example, Azzo's progress notes during 2019, 2020, and 2021 revealed that she discerned no significantly abnormal examination findings other than the Plaintiff's reports of tenderness in certain areas of her body. (R. 26–28); *see, e.g.*, (R. 343, 353, 436, 442, 453).

Moreover, as the ALJ additionally observed, to the extent the Plaintiff suffered from a number of symptoms, "the records suggest that [those] symptoms [were] managed with medication." (R. 28); *see also* (R. 339, 343, 347, 349, 359, 412, 435–36, 442, 448, 453). The ALJ noted, for instance, that in March 2019, the medical documentation indicated the Plaintiff was taking the drug Lyrica (as well as increasing her hydration) and "fe[lt] much better." (R. 26, 412). The ALJ also pointed out that the treatment materials for August and December 2019 similarly reflected that the Plaintiff's medications—which then included Evoxac and Tramadol—were benefitting her. (R. 26–27, 347, 349, 359). The ALJ described as well that during a March 2020 rheumatology visit, the Plaintiff advised Hydrocodone[7] had greatly

---

[7] The ALJ mistakenly referred to Hydrocodone as Tramadol in this respect. *See* (R. 27).

improved her quality of life and that during a May 2020 visit, she indicated she was functioning better with the help of her medications despite experiencing fatigue, generalized achiness, and soreness over her joints and muscles without swelling. (R. 27, 339, 343). The ALJ additionally highlighted that in November 2020, February 2021, and April 2021, the treatment notes demonstrated that the Plaintiff was feeling better as a result of the medications she had been prescribed. (R. 27, 436, 442, 448, 453).

As alluded to earlier, the Plaintiff relatedly appears to contend that Azzo was the only "treating source" who offered an opinion regarding the challenged limitations and that her assessments were therefore entitled to deference. (Doc. 13 at 8–10). This contention is unavailing.

The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. §§ 404.1520c, 416.920c; *Glover v. Comm'r, Soc. Sec. Admin*, 2022 WL 17826364, at *3 (11th Cir. Dec. 21, 2022). The amended regulatory scheme no longer necessitates that an ALJ "either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022); 20 C.F.R. §§ 404.1520c, 416.920c. Rather, the ALJ must assess the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors "that tend to support or contradict a medical opinion," such as

11

whether the source is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c); *see Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted). Of these factors, supportability and consistency are the most important. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Nixon*, 2021 WL 4146295, at *3.

Under the revised Regulations, statements by a medical provider regarding a claimant's RFC, while relevant to the ALJ's findings, are not determinative of the case. *See Riley v. Comm'r of Soc. Sec.*, 2023 WL 2894366, at *3 (M.D. Fla. Apr. 11, 2023). Nor is there any requirement that an RFC must be predicated upon a provider's opinion. *Id.* (citing *Green v. Soc. Sec. Admin.*, 223 Fed. App'x 915, 923 (11th Cir. 2007); *Drew v. Kijakazi*, 2022 WL 4463585, at *6 (M.D. Fla. Sept. 26, 2022)).

Here, the Plaintiff does not contest the ALJ's consistency and supportability determinations relative to Azzo's July 2021 opinion and has thus waived any such argument. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) (citing *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)). Even were that not the case, the ALJ was under no obligation to defer to Azzo's physical capacity findings. *Riley*, 2023 WL 289366, at *3.

The Plaintiff's final argument—as referenced previously—is that the ALJ "mischaracteriz[ed]" Azzo's treatment records. (Doc. 13 at 9). To bolster this contention, the Plaintiff cites to various items in the record (including evidence the ALJ addressed in his decision) that the Plaintiff insists show she experienced chronic back pain and tenderness in parts of her body, all of which allegedly worsened with prolonged standing and walking even when she was taking medications. (Doc. 13 at 9–10) (citing R. 444–66). There are a number of problems with this argument.

To start, it misapprehends the nature of the Court's review on appeal. "Under [the] substantial evidence standard of review, [the Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims*, 706 F. App'x at 604 (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). The Plaintiff has not done so here.

The Plaintiff's argument is also deficient to the extent that it essentially asks the Court to reweigh the evidence, which the Court cannot do. *Viverette*, 13 F.4th at 1314; *Carter*, 726 F. App'x at 739. The fact that the ALJ did not explicitly identify in his decision some of the information upon which the Plaintiff now relies does not alter this conclusion. It is well settled that an ALJ is not compelled to set forth every piece of evidence in his decision, so long as his decision demonstrates he considered the claimant's medical condition as a whole. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395

F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).  It is evident from the ALJ's decision that he did so here.

IV.

Based upon the foregoing, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Commissioner's favor and to close the case.

SO ORDERED in Tampa, Florida, this 28th day of September 2023.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record